STATE *ex rel.* BRUMIT *v.* J. F. GRINDSTAFF *et al.*[*]

(*Knoxville.* September Term, 1921.)

1. **COURTS.** Supreme court has jurisdiction of appeal in controversy over office.

The supreme court has jurisdiction of an appeal direct from chancery court in a controversy over the office of a recorder of a town, wherein relator sought to restrain another claiming the office from interfering with the right of relator to exercise the functions, and also prayed for an alternative writ of mandamus requiring the defendant and others to recognize him as recorder; it being the custom of the supreme court to treat almost any controversy over an office as an election contest. (*Post p. 558.*)

Acts cited and approved: Acts 1905, ch. 528: Acts 1921, ch. 117;

Case cited and approved: Heiskell v. Lowe, 126 Tenn., 475.

2. **AFFIDAVITS.** Petition may be sworn to before notary public.

A petition in chancery court for mandamus may be sworn to before a notary public, not being required by Thompson-Shannon's Code section 5331, to be sworn to before a judge, justice of the peace, or clerk of a circuit court. (*Post, pp. 558, 559.*)

Case cited and approved: State ex rel. v. Arnwine, 138 Tenn., 227.

3. **MANDAMUS.** Dismissal of alternative writ returnable to chancellor properly refused.

Where petition was filed in chancery court praying for an injunction to restrain interference with right to exercise duties as officer and also for an alternative writ of mandamus, an objection that the alternative writ should be dismissed because made returnable to the chancellor instead of to the next term of court was of no force, where, in the proceedings had before him, the chancellor re-

---

[*]On injunction to try title to office, see note in 8 L. R. A. (N. S.), 128.

State ex rel. v. Grindstaff.

quired an answer to the writ at a subsequent rule day, which was proper practice. (*Post, p.* 559.)

4. **ELECTIONS. Mandamus. Chancellor has no jurisdiction of election contest, but may compel recognition of right to office.**

The chancery court does not have jurisdiction of an election contest, but chancellor has jurisdiction of a mandamus suit wherein it is sought to compel an officer to recognize some other person as an officer, which incidentally involves the determination of an election contest. (*Post, pp.* 559, 560.)

Case cited and approved: Adcock v. Houk, 122 Tenn., 269.

Cases cited and distinguished: Lawrence v. Ingersoll, 88 Tenn., 52; Pucket v. Bean, 58 Tenn, 600.

5. **OFFICERS. Equity will not prevent party from enjoying office pending suit.**

In a suit to determine the right of a party to a public office, equity will not interfere by injunction to prevent the incumbent from enjoying the office pending the suit. (*Post, pp.* 560-562.)

Cases cited and approved: Hogan v. Hamilton County, 132 Tenn., 554; Brown v. Ice Co., 122 Tenn., 239.

Laws cited and construed: Laws 1877, ch. 97.

6. **MUNICIPAL CORPORATIONS. Recorder suing for office entitled to salary for entire term.**

One claiming office of town recorder, who is successful in an action to compel incumbent and the board of mayor and aldermen to recognize him as officer, is entitled to a salary for his entire term from the municipality. (*Post, pp.* 562, 563.)

Cases cited and approved: Memphis v. Woodward, 59 Tenn., 499; Currey v. Wright, 77 Tenn., 247.

### FROM CARTER

Appeal from the Chancery Court of Carter County.—
HON. HAL H. HAYNES, Chancellor.

DIVINE & GUINN, for plaintiffs.

W. R. ALLEN, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

The town of Elizabethton was incorporated by chapter
528 of the Acts of 1905. It was enacted that the board
of mayor and aldermen might provide by ordinance for
the election of a recorder, who should be elected by said
board of mayor and aldermen and hold office for the
term of two years and until his successor was elected and
qualified. The board of mayor and alderman subse-
quently passed an ordinance providing that a recorder
should be elected by them at the first meeting after their
election and qualification, or, if they failed to make such
election at their first meeting, then it should be made at
some subsequent meeting.

It was elsewhere provided in the act of 1905 that the
board of mayor and aldermen should be elected them-
selves by the people every two years on the second
Thursday of May, begining in May, 1905.

The board of mayor and aldermen elected in May,
1919, after their election selected the defendant Grind-
staff as recorder.

By chapter 117 of the Acts of 1921, which became a
law April 8, 1921, the provisions of the Dortch Law were
extended to the whole state. It became impracticable to
comply with the provisions of this law and hold a legal

election on the second Thursday of May, 1921. The election commissioners therefore did not call the Elizabethton election for that date, but made a call for said election for Saturday, July 2, 1921, on which latter date an election was held and a new board of mayor and aldermen chosen for Elizabethton.

The old board after the second Thursday of May, 1921, and before the election of the new board July 2, 1921, undertook to re-elect defendant Grindstaff as recorder for another term of two years. After the election of the new board they undertook to elect the relator, T. M. Brumit, as recorder for a term of two years.

Some other facts appear in the record which need not be stated.

This bill was filed on the relation of Brumit alleging that he was entitled to the office of recorder of Elizabethton upon the facts stated, and praying that an injunction issue to restrain defendant Grindstaff and others— "from in any way interfering with the free and unchallenged right of said T. M. Brumit to exercise the functions and discharge the duties of the office of recorder of Elizabethton, Tenn., and that they be enjoined from withqlding from him the books, papers funds, and insignia of said office, or doing any act prohibiting him, or interfering with him assuming the office or possessing himself of the said books, papers, funds, and insignia."

The bill further prayed for an alternative writ of mandamus requiring the defendant Grindstaff and others to recognize the relator as recorder of the town of Elizabethton, and to admit him to said office, or to show cause

at a date to be fixed, etc. A *fiat* was obtained from a circuit judge directing the issuance of the writ of injunction as prayed upon execution of bond, and directing the issuance of the writ of alternative mandamus. The writ of mandamus was made returnable before Chanellor Haynes at chambers.

A motion to dismiss the bill, a motion to dissolve the injunction, and a demurrer were interposed by the defendant. Several questions were thereby raised, which we will notice later.

The chancellor overruled the motion to dismiss and the motion to dissolve the injunction as well as the demurrer. He directed answer be made to the alternative writ of mandamus at a subsequent rule day. In his discretion he allowed an appeal at this stage of the proceeding.

Some doubt has arisen as to the propriety of the appeal to this court rather than to the court of civil appeals. We have concluded that the jurisdiction is with us, since it has been our custom to treat almost any controversy over an office as an election contest. Such has been the practice in this court in *Heiskell* v. *Lowe,* 126 Tenn., 475, 153 S. W., 284, and other cases, at least for purposes of determining appellate jurisdiction.

It was first insisted before the chancellor that the petition for mandamus should have been dismissed, inasmuch as it was sworn to before a notary public, and not before a judge, justice of the peace, or clerk of a circuit court, as required by section 5331, Thompson's-Shannon's Code, regulating the issuance of the writ of mandamus by circuit judges.

The chancellor properly overruled this objection. *State ex rel.* v. *Arnwine,* 138 Tenn., 227, 197 S. W., 564. A bill in the chancery court may be sworn to before a notary whether it be a mandamus bill or seek other relief.

It was also urged that the alternative writ should be dismissed because made returnable to the chancellor instead of to the next term of court.

This objection is not now of any force, since in the proceedings had before him the chancellor required an answer to the writ at a subsequent rule day. We think this is proper practice under the reasoning of *State ex rel.* v. *Arnwine, supra,* in a mandamus case in the chancery court.

The demurrer, generally speaking, raises the question of the jurisdiction of the chancery court and the question of the propriety of the injunction in this case.

It is now well settled in Tennessee that the chancery court does not have jurisdiction of an election contest. *Adcock* v. *Houk,* 122 Tenn., 269, 122 S. W., 979, and cases cited.

Cases very similar to this one have been treated as election contests, and we are by no means sure that this may not be properly so characterized under our decisions.

A mandamus suit, however, may incidentally involve the determination of an election contest, and the chancery court has jurisdiction of a suit like this.

In *Lawrence* v. *Ingersoll,* 88 Tenn., 52, 12 S. W., 422, 6 L. R. A., 308, 17 Am. St. Rep., 870, it was said:

"In such case it is well settle that the legality and validity of such election may be inquired into in any proceeding by mandamus to compel other persons to recognize the claimant's title to the office, or when he seeks to enter into it or otherwise assert his right to act as duly elected."

The same thought is contained in *Pucket* v. *Bean*, 11 Heisk., 600. In *Adcock* v. *Houck, supra,* the authority of these case is recognized and such cases differentiated as follows:

"As to mandamus cases, when it is sought to compel an officer to do some particular thing—that is to recognize some other person as an officer, or to obey some mandate supposed to be the mandate of the people rendered in the form of an election—it necessarily results that the officer or person so sought to be coerced must have the right to question whether the person put forward as an officer to be received is in fact an officer, or whether the assumed direction is a real direction of the people."

So we are of opinion that the chancellor properly entertained this as a mandamus suit, and his orders in that respect were correct.

We think, however, the chancellor was in error in granting an injunction herein.

Whether, strictly speaking, the case be called an election contest or not, it is a suit to determine the right of a party to a public office. It is almost invariably held that equity will not interfere by injunction to prevent such a party from enjoying the office pending such a

suit. This rule seems to be without exception where the injunction is sought against the incumbent.

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers, or their title to office; such questions being of a purely legal nature and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common-law remedy by proceedings in the nature of a *quo warranto*." High on Injunctions, section 1312.

"It is a general rule of law applied in almost all jurisdictions that an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine the right thereto. This rule is always applied as to incumbents of offices, and is applied as well where the petition is made by the attorney of the State, as where the application is made by a private citizen." 29 Cyc., 1416, and cases cited.

See, also, cases collected in note L. R. A. (N. S.), 128.

And it was said in *Adcock* v. *Houk, supra,* apart from the discussion of the jurisdiction of the chancery court over election contests, and in consideration of the propriety of the remedy:

"The chancery court has no power to enjoin election officers from issuing a certificate of election, or restrain-

144 Tenn.—36

ing 'public officers from assuming their functions, even though it be alleged that there was fraud in the election sufficient to vitiate it. 22 Cyc., 1886; 10 Am. & Eng. Enc. of Law, 817, 818; High on Injunctions, Sections 1312, 1316.''

In *Hogan* v. *McCutcheon* (Knoxville, 1915), referred to in *Hogan* v. *Hamilton County,* 132 Tenn., 554, 179 S. W., 128, an injunction was denied the incumbent of an office against the claim of a defaulter who had been elected thereto. *Lawrence* v. *Ingersoll, supra,* is no authority for the injunction sought in this case. The discussion in that case was whether the injunction sought was mandatory or not. No injunction at all was awarded.

Although the chancery court, under the act of 1877 (Laws 1877, chapter 97), has jurisdiction to issue a mandamus, the remedies of mandamus and injunction are not interchangeable. *Brown* v. *Ice Co.,* 122 Tenn., 239, 122 S. W., 84, 19 Ann. Cas., 308. The injunction here is not sought in aid of the writ of mandamus, but if granted will take the place of that writ and make the issuance of the latter unnecessary.

We see no reason for an injunction in this case, and think it would violate settled rules of procedure. The relator has an adequate remedy otherwise than through injunction, and there is no question of an irreparable injury. If relator is successful, he will be entitled to the salary for his entire term from the municipality. *Memphis* v. *Woodward,* 12 Heisk., 499, 27 Am. Rep., 750; *Currey* v. *Wright,* 9 Lea, 247.

We do not think a sound public policy would permit such use of the writ of injunction in suits to try the title

to public office. In a mandamus case under our practice the peremptory writ has not, so far as we know, ever been issued before the return of the alternative writ. This always insures notice to the adverse party and a hearing before there is any removal from office. Injunctions are frequently issued without any notice on *ex parte* statements, and such interference with the public service and the discharge of official duties is not desirable.

The bill herein, therefore, in so far as it seeks an injunction, will be dismissed and the chancellor's decree to that extent will be reversed. The cause will be remanded to the chancery court for further proceedings as a mandamus cause. Answer will be made to the alternative writ on the second rule day after the mandate of this court reaches the court below.

All the costs of this court and such of the costs of the lower court as relate to the injunction will be paid by the relator.

We do not reach the merits of the case on this hearing.