IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Submitted on Briefs June 8, 2010


**ROY L. CRAWFORD**

**v.**

**TENNESSEE DEPARTMENT OF CORRECTION and QUENTIN WHITE,**
**in his capacity as COMMISSIONER OF THE TENNESSEE DEPARTMENT**
**OF CORRECTION**


**Appeal from the Chancery Court for Davidson County**
**No. 04-2148-III      Ellen Hobbs Lyle, Chancellor**

---

**No. M2009-00439-COA-R3-CV - Filed September 21, 2010**

---

This appeal concerns a post-judgment motion. The petitioner is an inmate in the custody of the respondent department of correction. The petitioner inmate filed a complaint for declaratory judgment regarding the department of correction's denial of his request for a parole hearing. The department answered the complaint, and no action was taken on the case by either party in the two years that followed. The trial court entered a case management order, requiring the petitioner inmate to set a date for a final hearing within a given time. After the petitioner inmate failed to do so, the trial court dismissed the petitioner's complaint without prejudice. Nearly a year later, the petitioner filed a motion for summary judgment. Ultimately, the trial court concluded that it lacked subject matter jurisdiction to consider the motion because it was filed after the order of dismissal became final. The petitioner appeals. We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. and J. STEVEN STAFFORD, J., joined.

Petitioner/Appellant Roy L. Crawford, Nashville, Tennessee, pro se

Robert E. Cooper, Jr., Attorney General and Reporter, and Arthur Crownover, II, Nashville, Tennessee, for the Respondent/Appellees, Tennessee Department of Correction and Quentin White

# MEMORANDUM OPINION[1]

## FACTS AND PROCEDURAL HISTORY

Petitioner/Appellant Roy L. Crawford ("Mr. Crawford") is an inmate in the custody of the Respondent/Appellee Tennessee Department of Correction ("Department"), currently housed in the Deberrry Special Needs Facility in Nashville, Tennessee.

In 1975 and 1976, Mr. Crawford was convicted of some eight felonies, including armed robbery with a deadly weapon, assault with intent to commit murder, armed robbery with a deadly weapon, and second degree murder. He was ordered to serve a life sentence for second degree murder, consecutive with his sentences, for the armed robbery and assault convictions.

In June 1978, Mr. Crawford was released on "extended furlough."[2] The terms of Mr. Crawford's extended furlough release required him to report to his parole counselor as directed, and to obtain the consent of the parole counselor before leaving Tennessee.[3]

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. R. App. P. 10.

[2]The record does not indicate how Mr. Crawford qualified for release on extended furlough. In his appellate brief, Mr. Crawford alleges that the extended furlough release program was utilized by the administration of former Tennessee Governor Ray Blanton to alleviate the overcrowding in the State prison system experienced in 1977 and 1978. In January 1979, within months after Mr. Crawford was granted furlough status, then-outgoing Governor Blanton signed documents granting executive clemency to numerous inmates imprisoned in State facilities. *Alexander v. Alexander*, 706 F.2d 751, 752 (6th Cir. 1983). Two days later, Tennessee's Governor-Elect Lamar Alexander was informed by the United States Attorney that Governor Blanton's grant of releases and clemency to inmates was the subject of a federal investigation. *Id.* at 753. As a result of these disclosures, Governor-Elect Alexander was sworn into office that day, three days before his scheduled inauguration date. *Id.* Later that year, Tennessee's legislature abolished the extended furlough system utilized under the Blanton administration. *See Tenn. Dept. of Correction Historical Timeline* at 12.

[3]Other terms of Mr. Crawford's extended furlough release prohibited him from possessing a deadly weapon and required him to "work diligently at a lawful occupation."

Contrary to the terms of his extended furlough, Mr. Crawford left the supervision of his parole counselor, and he relocated to California in November 1978. As a result, the Department put Mr. Crawford on escape status. In 1980, Mr. Crawford was convicted of arson in California. After about three years of incarceration in California, Mr. Crawford was released on parole and he returned to Tennessee. In November 1984, Mr. Crawford committed two more felonies stemming from possession of a firearm, and for which he was subsequently convicted.

In July 1985, Mr. Crawford returned to the Department's custody. Mr. Crawford completed his ten-year sentence for armed robbery without a parole hearing, based on Tennessee Code Annotated § 40-28-123(b)(1),[4] which states that an inmate convicted of a felony while on various types of release "shall" serve the remainder of his term without parole eligibility. Thereafter, Mr. Crawford began serving his consecutive life sentence for second degree murder.

Since re-entering the custody of the Department of Correction in 1985, Mr. Crawford has repeatedly sought a parole hearing with respect to his life sentence. Each time, the Department has denied his request, citing Section 40-28-123(b)(1).

In July 2004, after the Department again denied Mr. Crawford's petition for a parole hearing, he filed a complaint for declaratory judgment in the Davidson County Chancery Court ("trial court"). In the complaint, Mr. Crawford asserts that Section 40-28-123(b)(1) is inapplicable to his request for a parole hearing for his second degree murder conviction, because the subject felonies were committed while he was on release for the armed robbery conviction. Consequently, Mr. Crawford argues that the Department's application of the statute is improper and the Department's actions are unconstitutional, invalid, void, and arbitrary and

---

[4]Tennessee Code Annotated § 40-28-123(b)(1) provides:

> Any prisoner who is convicted in this state of any felony except escape, and where the felony is committed while the prisoner is assigned to any work release, educational release, restitution release or other program whereby the prisoner enjoys the privilege of supervised release into the community, including, but not limited to, participation in any programs authorized by § 41-21-208 or § 41-21-227, the prisoner shall serve the remainder of the term without benefit of parole eligibility or further participation in any of these programs. The board shall have the authority to penalize or punish prisoners who escape from any of the above programs in accordance with board policy.

T.C.A. § 40-28-123(b)(1) (2006).

capricious. On this basis, Mr. Crawford's complaint requests an order granting him a parole hearing. When Mr. Crawford filed the complaint, he was represented by counsel.

In September 2004, the Department answered the complaint and admitted that Mr. Crawford had been denied a parole hearing, pursuant to Section 40-28-123. In the answer, the Department asserts that Mr. Crawford committed the subject felonies while on release status for the second degree murder conviction and the armed robbery conviction. Consequently, the Department denied violating Mr. Crawford's rights and sought dismissal of his complaint.

In October 2004, Mr. Crawford's attorney filed discovery requests on Mr. Crawford's behalf in the Chancery Court declaratory judgment action. Apart from that, however, neither party took any apparent action on the case for nearly two years.[5]

On April 10, 2006, the trial court entered a case management order. Noting the age of the case, the order instructed Mr. Crawford's attorney to contact opposing counsel to arrange a date for a final hearing. In the order, the trial court warned that "[i]f an order setting the matter for final hearing is not entered prior to May 5, 2006," the case would be dismissed without prejudice. May 5, 2006, passed without entry of an order setting a final hearing date. As a result, on May 10, 2006, the trial court entered a final order dismissing Mr. Crawford's complaint without prejudice. The order taxed court costs against Mr. Crawford.

After the trial court's dismissal of the complaint, Mr. Crawford's attorney sent him a letter advising him to refile his complaint within one year.[6] Mr. Crawford apparently decided to disregard his attorney's advice and proceed *pro se*. In April 2007, Mr. Crawford sent the trial court clerk's office a "motion to alternatively file for summary judgment instead of declaratory judgment," with a request that it be filed. When the trial court's Clerk and Master received the document, she returned it to Mr. Crawford on May 14, 2007, with a letter

---

[5]In February 2006, Mr. Crawford sent a letter to the Clerk and Master of the trial court inquiring about the status of his case. The Clerk responded in April 2006 with a letter explaining that she could not communicate directly with Mr. Crawford because he was represented by counsel. The Clerk forwarded the response to Mr. Crawford's attorney and opposing counsel.

[6]The appellate record does not contain a copy of the letter. A copy of the letter is attached to appellant's brief, but attaching a document to a party's appellate brief does not make the document part of the appellate record. *UT Med. Group, Inc. v. Vogt*, 235 S.W.3d 110, 112 (Tenn. 2007) (citing Tenn. R. App. P. 13(c); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).

informing him that the motion could not be filed because the case was closed.[7]  The Clerk's letter explained to Mr. Crawford that he could either file a motion to set aside the order of dismissal or that he could pay the court costs due and file a new lawsuit.

In response to the Clerk's refusal to file his motion, Mr. Crawford pursued multiple avenues of redress.  First, he filed an "amended petition for judicial review" asserting that he had already paid the court costs due in a separate case and that he was entitled to make a minimal down payment on the costs due on the current case.  Next, he sent a request for a writ of mandamus to the Tennessee Supreme Court, with respect to the Clerk's alleged improper refusal to file his summary judgment motion.  Finally, he filed a complaint with the Board of Professional Responsibility and sought to file a legal malpractice lawsuit against his former attorney.  All of these avenues proved unfruitful.

Undeterred by his lack of success, on October 8, 2008, Mr. Crawford sent a letter to the Clerk, insisting that the Clerk had erred in refusing to file his April 2007 summary judgment motion.[8]  Mr. Crawford's letter apparently made its way to the trial judge.  After reviewing the letter, the trial court determined that the letter, in substance, was a motion to reopen the court file and to file the motion for summary judgment.

On October 28, 2008, the trial court entered an order re-opening the file and allowed Mr. Crawford's motion for summary judgment to be filed *nunc pro tunc* as of May 8, 2007. The trial court then denied the motion for summary judgment, and found that because the summary judgment motion was filed over a year after entry of the final order dismissing the complaint, the trial court did not have subject matter jurisdiction to consider the motion.

Mr. Crawford now appeals the trial court's October 2008 order.[9]

## ISSUES ON APPEAL AND STANDARD OF REVIEW

In his brief on appeal, Mr. Crawford challenges the applicability of Section 40-28-123(b)(1) to deny him a parole hearing, the Clerk's initial refusal to file his motion for summary judgment, the propriety of the trial court's decision to treat his October 2008 letter as a motion to reopen, and the "use [of] another sentence to take [Mr. Crawford's] parole and

---

[7]The appellate record does not contain a copy of the letter by the Clerk and Master.

[8]The appellate record does not contain a copy of Mr. Crawford's letter.

[9]On July 7, 2010, Mr. Crawford filed a "Motion For Voluntary Dismissal Pursuant to T.R.A.P. Rule (15) And Expand the Record Pursuant to Tenn. R. Civ. P. 41.01," attaching a document entitled "Petition for Writ of Certiorari" and other documents.  After due consideration, the motion is respectfully denied.

sentence credits without due process of law." Having reviewed the record, the only issue properly before this Court is whether the trial court erred in concluding that it lacked subject matter jurisdiction to consider Mr. Crawford's post-judgment motion for summary judgment.

Whether a court possesses subject matter jurisdiction is a question of law. *Sw. Williamson County Cmty. Ass'n v. Saltsman*, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001). The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. *Mimms v. Mimms*, 234 S.W.3d 634, 637 (Tenn. Ct. App. 2007) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993)).

## ANALYSIS

"Subject matter jurisdiction concerns the authority of a particular court to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (citing *Landers v. Jones*, 872 S.W.2d 674 (Tenn.1994)). Subject matter jurisdiction pertains "to the right of the court to adjudicate, or to make an award through the remedies provided by law upon facts proved or admitted in favor of, or against, persons who are brought before the court under sanction of law." *Brandy Hills Estates, LLC v. Reeves*, 237 S.W.3d 307, 314-15 (Tenn. Ct. App. 2006) (quoting 17 Tennessee Jurisprudence *Jurisdiction* § 2 (1994)). "[O]nce a judgment . . . becomes a final judgment, the trial court loses the right to exercise control over it due to the fact that the judgment is final for the purpose of appeal and final as res judicata upon the facts then existing." *Moon v. Keisling*, No. M2008-00316-COA-R3-CV, 2008 WL 4367557, at *2 (Tenn. Ct. App. Sept. 24, 2008), *no perm. app.* (citing *Hicks v. Hicks*, 176 S.W.2d 371, 374-75 (Tenn. 1943); *Darty v. Darty*, 232 S.W.2d 59, 62 (Tenn. Ct. App. 1949)).

A final judgment is one that adjudicates all claims, rights and liabilities of all parties to an action. *See* TENN. R. APP. P. 3(a). In other words, "[a] final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.' " *In re Estate of Ridley*, 270 S.W.3d 37, 40 (Tenn. 2008) (quoting *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003)). Here, the May 2006 order was plainly a final judgment because it dismissed Mr. Crawford's case *in toto* and left "nothing else for the trial court to do." *Id.*

Under all of these circumstances, we agree with the trial court's conclusion that it did not have subject matter jurisdiction to consider Mr. Crawford's motion for summary judgment in this matter.

**CONCLUSION**

The decision of the trial court is affirmed. The costs of this appeal are taxed to Appellant Roy L. Crawford, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE